

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00072-CR

Larry **WASHINGTON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 365th Judicial District Court, Maverick County, Texas
Trial Court No. 24-04-08783-MCRAJA
Honorable Amado J. Abascal III, Judge Presiding

Opinion by:  Lori Massey Brissette, Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Lori Massey Brissette, Justice

Delivered and Filed: June 30, 2026

AFFIRMED

Appellant, Larry Washington, was convicted of one count of smuggling of persons and sentenced to five years' imprisonment. *See* TEX. PENAL CODE ANN. 20.05(a)(1)(A). On appeal, he challenges his conviction on multiple grounds, asserting facial and as-applied constitutional challenges to the state smuggling statute and challenging the sufficiency of evidence supporting his conviction. We affirm.

**BACKGROUND**

On October 27, 2023, Larry Washington was travelling on Highway 57 in Maverick County when he stopped his vehicle on the side of the road to pick up two women who emerged from the brush. According to trial testimony, another driver on the same road witnessed the incident and pulled over to alert Texas Department of Public Safety ("DPS") criminal investigator Quentin Stovall, who was sitting at the intersection of Highway 57 and Farm-to-Market Road 481 as part of Operation Lone Star. Investigator Stovall testified that the driver informed him "he had just observed a Nissan Altima with paper plates pick up two people — two women that came out of the brush[.]"

Investigator Stovall located a vehicle matching the description and ran the license plate multiple times, but there was no return on the tag. Investigator Stovall initiated a traffic stop for operation of an unregistered motor vehicle, and upon approaching the passenger side of the vehicle, he "observed two women partially laid down just below the window line[.]" Texas DPS Trooper John Newman assisted Investigator Stovall in conducting the stop and subsequent investigation. Trooper Newman likewise testified he could not see the passengers in the backseat because "they were slouching right below the headline — below the backseat." Investigator Stovall noted the women were wearing "beige clothing" and a "dark shirt" which was consistent with "people that are being smuggled into the United States" to avoid detection. He further testified that the area where Washington picked up the passengers was not a safe place for two women to be on the side of the road.

Investigator Stovall detained Larry Washington and the front seat passenger. Washington initially explained that he picked up the women on the side of the road to try to get them to safety. However, in an interview with DPS Criminal Investigations Division Agent Teresa Estrada, who

responded to assist with the human smuggling investigation, Washington admitted that a person he referred to as "Boss" told him to pick up "two people on this side of the checkpoint" and to "make sure they go in the trunk." Washington told Agent Estrada that he mistakenly understood that if they were on "this side of the checkpoint, then they were not illegal." Washington told Agent Estrada that he was going to drive the two women to Houston. The two female passengers were taken into custody by Border Patrol.

Washington was arrested and later indicted for one count of smuggling of persons under Texas Penal Code section 20.05(a)(1)(A). Washington was convicted following a jury trial, and the jury assessed punishment at five years' imprisonment. After conviction, Washington filed a motion for new trial, which was denied by operation of law. He then timely appealed.

## ANALYSIS

### I. Constitutional Challenges

#### A. Standard of Review

Washington raises seven issues on appeal. In his first three issues, Washington argues his conviction was unconstitutional under the First Amendment because the state smuggling statute is facially unconstitutional and unconstitutional as applied to his prosecution. In his fourth issue, Washington argues the state smuggling statute is unconstitutionally vague facially and as applied to his prosecution. In issues five and six, he argues that as applied to his prosecution, the smuggling statute is field and conflict preempted by federal law. We review Appellant's constitutional challenges *de novo*. *See Tex. Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839, 846 (Tex.

2020); *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *State v. Flores*, 679 S.W.3d 232, 243 (Tex. App.—San Antonio 2023, pet. ref'd).

### B. First Amendment Facial Challenge to the State Human Smuggling Statute as Overbroad and as an Impermissible Regulation of Thought

Washington's first two issues argue section 20.05(a)(1)(A) facially violates the First Amendment to the United States Constitution because it is overbroad[1] and impermissibly regulates thought. The arguments in this case are substantively the same as those in *Roberts v. State*, in which this Court rejected a First Amendment facial challenge to the same statute. No. 04-24-00485-CR, 2026 WL 290378, at *2–4 (Tex. App.—San Antonio Feb. 4, 2026, pet. filed). Accordingly, for the reasons articulated in *Roberts*, we overrule Appellant's first two issues.[2] *See id*.

### C. As-Applied First Amendment Challenge

Washington contends in his third issue that as applied to his prosecution, section 20.05(a)(1)(A) violates the First Amendment because it "solely regulated a disfavored thought" and the State did not show that its "application was narrowly tailored to serve compelling state interests."

---

[1] In his brief, Washington raises a vagueness challenge within his First Amendment overbreadth challenge. Because Washington challenges section 20.05(a)(1)(A) as both unconstitutionally overbroad and vague, we address the overbreadth challenge first. *See Ex parte Nuncio,* 579 S.W.3d 488, 453 (Tex. App.—San Antonio 2019), *aff'd*, 662 S.W.3d 903 (Tex. Crim. App. 2022) ("When, as here, a party challenges a statute as both overbroad and vague, we must first consider the overbreadth challenge."). We address Washington's vagueness challenge in section I.D.

[2] After this court's decision in *Roberts* issued, Washington filed a letter emphasizing that his First Amendment overbreadth challenge was not answered by our holding in *Roberts*. We disagree. "According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech judged in relation to the statute's plainly legitimate sweep." *Ex parte Lo*, 424 S.W.3d 10, 18 (Tex. Crim. App. 2013) (quoting *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003)); *see also Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016). In overruling *Roberts's* First Amendment challenge, we held that "having considered the scope of section 20.05(a)(1)(A) and explored its full set of applications … any unconstitutional applications are not substantial in comparison to constitutional ones." *Roberts*, 2026 WL 290378, at *4.

### 1. Applicable Law

For as-applied constitutional challenges, we must determine whether there was a constitutional violation in the application of the statute to the defendant. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011). The merits of an as-applied challenge depend on the evidence presented at trial. *Owens v. State*, 728 S.W.3d 155, 160 (Tex. Crim. App. 2025) (citing *Lykos*, 330 S.W.3d at 910). To succeed on an as-applied challenge, a defendant must show that the statute is unconstitutional when applied to his specific situation. *See Sanchez-Vasquez v. State*, 610 S.W.3d 36, 41 (Tex. App.—San Antonio 2020, pet. ref'd) (citing *Bynum v. State*, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989)). The facial validity of a statute does not foreclose such a challenge. *Owens*, 728 S.W.3d at 160 (citations omitted).

Under the First Amendment, the government generally may not enact laws that abridge the freedom of speech. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); U.S. CONST. amend. I. While "[t]he First Amendment protects the freedom to think as you will and to speak as you think … its protections extend only to conduct that is inherently expressive." *Roberts*, 2026 WL 290378, at *4 (citing *303 Creative LLC v. Elenis*, 600 U.S. 570, 584 (2023) and *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 66 (2006)) (internal quotations omitted). Conduct "possesses sufficient communicative elements to bring the First Amendment into play" when there was "an intent to convey a particularized message," and "the likelihood was great that the message would be understood by those who viewed it." *Ex parte Sanders*, 663 S.W.3d 197, 210–11 (Tex. Crim. App. 2022) (citations omitted) (listing conduct the U.S. Supreme Court has recognized as expressive). "Content-based laws are those which target *speech* based on its *communicative content*." *Owens*, 728 S.W.3d at 160 (emphasis added) (citing *Reed*, 576 U.S. at 163). "If it is

necessary to look at the content of the speech to decide if the speaker violated the law, the regulation is content based." *Owens*, 728 S.W.3d at 161.

### 2. Discussion

Contrary to Washington's assertion, his prosecution under section 20.05(a)(1)(A) did not "solely regulate[] a disfavored thought," because the trial evidence shows that Washington was prosecuted and convicted for his intent to conceal individuals from law enforcement with action in furtherance of concealment. *Roberts*, 2026 WL 290378, at \*4. Under the version of the statute that applies here,[3] "a person commits an offense if the person knowingly (1) uses a motor vehicle … to transport an individual with the intent to (A) conceal the individual from a peace officer[.]" TEX. PENAL CODE ANN. § 20.05(a)(1)(A).

The evidence presented at Washington's trial shows that Washington drove to Maverick County and picked up two passengers on the side of the road. He picked them up in an area that was unsafe for people to be on the side of the road. Additionally, Washington had specific instructions to locate these two women and drive them to Houston. His passengers were not visible when police approached the vehicle. When asked about his relationship to the passengers, he changed his story and admitted to Agent Estrada that a person he referred to as "Boss" instructed him to pick up "two people on this side of the checkpoint," to "make sure they go in the trunk," and drive them to Houston.

Washington proffers that "if a prosecution based on the content of a message is permitted only in very limited circumstances, the same must be true of prosecution based on the content of one's thoughts." Washington's attempt to categorize the statute at issue as content-based regulation by characterizing it as "solely regulat[ing] a disfavored thought" is misplaced. Section

---

[3] Section 20.05(a)(1)(A) has since been amended, but we apply the statute in effect at the time the defendant allegedly committed the charged crime. *Ex parte Carner*, 364 S.W.3d 896, 898 (Tex. Crim. App. 2012).

20.05(a)(1)(A) regulates an action—the use of a means of conveyance to transport an individual—that if done with the specific intent to conceal, is a crime. *See id*.; *Roberts*, 2026 WL 290378, at *2. Here, nothing in the statute, or the way in which it was applied, regulates speech or expressive conduct such that the First Amendment protections would apply. *See Sanders*, 663 S.W.3d at 210 (discussing that where a statute regulated noncommunicative conduct, it does not implicate the First Amendment). Washington was not prosecuted for solely thinking about concealing individuals, but for the act of transporting an individual in a motor vehicle with that specific intent. S*ee Lo*, 424 S.W.3d at 26 ("A man's thoughts are his own; he may sit in his armchair and think salacious thoughts, murderous thoughts, discriminatory thoughts, whatever thoughts he chooses, free from the 'thought police.' It is only when the man gets out of his armchair and acts upon his thoughts that the law may intervene."). Moreover, this specific intent to conceal could reasonably be inferred from Washington's actions of picking up his passengers from the brush, the passengers' attempts to avoid detection at the traffic stop, Washington's changing explanation for picking up the passengers, and his admission to authorities that he had been instructed by his "Boss" to pick up the passengers, secure them in the trunk, and transport them to Houston.

On this record, we hold that section 20.05(a)(1)(A), punishes non-expressive conduct that does not raise First Amendment concerns. *See id*.; *Roberts*, 2026 WL 290378, at *2; *see also Wisconsin v. Mitchell*, 508 U.S. 476, 482, 487 (1993) (holding statute enhancing punishments for crimes committed because of race did not violate the First Amendment because the statute was "aimed at conduct unprotected by the First Amendment"— not "offensive thought," as the lower court had held). Accordingly, we overrule Washington's as-applied First Amendment challenge.

### D. *Vagueness Challenge*

Washington argues that Section 20.05(a)(1)(A) is unconstitutionally vague facially and as-applied to his prosecution because (1) the intent to conceal language is "hopelessly indeterminate given the wide array of possible thoughts that one could have that satisfies this element;" (2) it fails to provide sufficient notice of the prohibited conduct; (3) his conduct — which, according to Washington was "transporting noncitizen passengers that he did not actually attempt to conceal" — is not explicitly contemplated in the statute; and (4) the statute does not provide minimal guidelines to law enforcement.

#### 1. Applicable Law

Generally, "a statute is unconstitutionally vague if its prohibitions are not clearly defined and it encourages arbitrary and erratic arrests and convictions." *Sanchez-Vasquez*, 610 S.W.3d at 40 (citing *Wagner v. State*, 539 S.W.3d 298, 313 (Tex. Crim. App. 2018). "A statute satisfies vagueness requirements if the statutory language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Wagner*, 539 S.W.3d at 314 (internal quotations omitted). We determine this by interpreting the plain meaning of the statute's language. *Sanchez-Vasquez*, 610 S.W.3d at 41. A statute is not rendered vague merely because it fails to specifically define the terms or words it uses. *Wagner*, 539 S.W.3d at 314. The absence of guidelines for law enforcement provides an independent basis for a vagueness challenge. *Ex parte Jarreau*, 623 S.W.3d 468, 475 (Tex. App.—San Antonio 2020, pet ref'd). "In a guidelines challenge, the inquiry is whether the statute in question establishes minimal guidelines to govern law enforcement." *Id*. (alternations and internal citations omitted). When a vagueness challenge involves First Amendment considerations, the statute can be facially invalid even if it is

not unconstitutional as applied to the defendant's conduct. *Flores*, 679 S.W.3d at 251 (citing *State v. Doyal*, 589 S.W.3d 136, 144 (Tex. Crim. App. 2019)).

This court addressed a facial vagueness challenge to section 20.05(a)(1)(A) in *State v. Flores*. *See Flores*, 679 S.W.3d at 250–52. In *Flores*, we held that the statute was not void for vagueness because "[e]ven if the outermost boundaries of the statute 'may be imprecise, any such uncertainty has little relevance here, where the captured conduct falls squarely within the "hard core" of the statute's proscriptions.'" *Id.* at 251 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973)).[4] Additionally, we held that "the statutory language conveys sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices." *Id.* (quoting *Ex parte Jarreau*, 623 S.W.3d at 475).

### 2. Discussion

Washington, similar to the defendants in *Flores*, argues that section 20.05(a)(1)(A) is facially void for vagueness. *Id.* at 251. For the reasons articulated in *Flores*, we overrule Washington's facial vagueness challenge. *Id.*

Washington's as-applied vagueness challenge centers on the definition of "intent to conceal" and his contention that he did not physically conceal his passengers. We hold, as applied to Washington's prosecution under section 20.05(a)(1)(A), the term "conceal" was not vague. While not defined by statute, the word "conceal" is generally understood to mean "to hide, to remove from sight or notice, or to keep from discovery or observation." *Gutierrez v. State*, 721 S.W.3d 639, 664 (Tex. App.—Corpus Christi–Edinburg 2025, pet. ref'd) (quoting *Stahmann v. State*, 548 S.W.3d 46, 55 (Tex. App.—Corpus Christi–Edinburg 2018), *aff'd* 602 S.W.3d 573 (Tex.

---

[4] In *Flores*, which consolidated seven cases where appellants challenged the smuggling statute on several constitutional grounds, each appellant was arrested for transporting suspected noncitizens in their vehicles. *See Flores*, 679 S.W.3d at 241.

Crim. App. 2020)). Intent is defined as a "conscious objective or desire to engage in the conduct or cause the result." Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ. Aɴɴ. § 6.03. Here, when all the words in section 20.05(a)(1)(A) are construed according to common usage and considered as a whole, the statute places a person of ordinary intelligence on notice that an "intent to conceal" covers not only the physical concealment of an individual, but efforts to prevent a law enforcement officer from discovering or identifying the smuggled individual. *See Jarreau*, 623 S.W.3d at 474. Therefore, we conclude that the statutory language is sufficiently clear to provide a person of ordinary intelligence a reasonable opportunity to know that Washington's course of conduct would be prohibited. *See Wagner*, 539 S.W.3d at 314.

Despite Washington's contention otherwise, his conduct is explicitly contemplated by the text of the law and falls within the "hard core" of section 20.05(a)(1)(A)'s "proscriptions." *See Flores*, 679 S.W.3d at 251. He argues that, unlike other smuggling cases in which the defendant physically and actively concealed the smuggled individuals, his prosecution did "not prove that he took any act to conceal [the individuals]." As we held in *Flores*, while section 20.05(a)(1)(A) requires officers to exercise some ordinary level of discretion as to what constitutes the prohibited conduct, it nevertheless establishes minimal guidelines to govern law enforcement. *Flores*, 679 S.W.3d at 251. Notwithstanding Washington's contention that his conviction was based on an officer's assumption that he "told his passengers to slouch down," the evidence presented at trial reasonably supports a finding that he intended to conceal and transport his passengers. Washington's actions of picking up his passengers from the side of the road coupled with his shifting statements and ultimate admission that "Boss" gave him specific instructions to pick up the passengers, place them in the trunk, and drive them to Houston, establishes conduct that falls squarely within the "hard core" of the statute's proscriptions. *Id*. On this record, we hold that

section 20.05(a)(1)(A) is not unconstitutionally vague, and, accordingly, overrule Washington's as-applied vagueness challenge.

### E. As-Applied Preemption

Washington argues that federal law preempts section 20.05(a)(1)(A) as applied to his case because Congress completely ousted the States from regulating in the "field of noncitizen smuggling." He also argues that his prosecution conflicts with federal immigration laws by encroaching on the federal government's exclusive prerogative to prosecute smuggling cases and by creating a harsher punishment scheme than under federal law.

This court analyzed a similar as-applied field and conflict preemption challenge to section 20.05(a)(1)(A) in *Roberts*, 2026 WL 290378, at *5–9. As we stated in *Roberts*, "unlike the instances where courts have found state statutes to be field preempted, section 20.05(a)(1)(A) does not require prosecutors to prove a noncitizen's illegal presence in the United States." *Id*. at *7. Here, similarly, Washington's conviction did not turn on proof of the passengers' immigration status. Instead, the evidence at trial focused on Washington's intent to conceal his passengers from all law enforcement. The State was not required to prove the passengers' unlawful status or that Washington knew his passengers' actual immigration status. *See id.* at *8. Therefore, because Appellant was prosecuted under a neutral statute, and his conduct was criminal regardless of the passengers' immigration status, we hold that Appellant's prosecution was not field preempted as applied to his prosecution. *See Id.* at *8.

We also hold that Appellant's prosecution was not conflict preempted as applied to his prosecution. "With an as-applied conflict preemption challenge, the application of the law must conflict with federal law's comprehensive immigration scheme or with the federal government's discretion over immigration related prosecutions." *Roberts*, 2026 WL 290378, at *8 (citing *Flores*,

679 S.W.3d at 246–47). However, evidence from Washington's trial does not show that his prosecution interfered with federal law or federal discretion over immigration-related prosecutions. Further, there is no evidence in the record to suggest that federal prosecutors wished to pursue federal charges against Washington. On this record, we hold that Washington's prosecution under section 20.05(a)(1)(A) was not preempted through conflict with federal law. *See Roberts*, 2026 WL 290378, at *8; *see also Kansas v. Garcia*, 589 U.S. 191, 211 (2020) ("the mere fact that state laws like the Kansas provisions at issue overlap to some degree with federal criminal provisions does not even begin to make a case for conflict preemption"); *Gutierrez*, 721 S.W.3d at 657 (citing *Kansas* in rejecting appellant's as-applied conflict preemption argument regarding section 20.05(a)(1)(A)).

## II.     Sufficiency of the Evidence

In his final issue, Washington contends his conviction is not supported by legally sufficient evidence because there is no evidence that he took steps to conceal the passengers in his vehicle.

### A. *Standard of Review and Applicable Law*

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). A jury may "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "[N]o evidence is ignored because the standard requires a reviewing court to view all of the evidence in the light most favorable to the verdict." *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016) (internal

quotation marks and emphasis omitted) (citing *Jackson*, 443 U.S. at 318–19 and *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004)).

A person commits the offense of smuggling of persons if they knowingly use a motor vehicle to transport an individual with the intent to conceal the individual from a peace officer or special investigator. TEX. PENAL CODE § 20.05(a)(1)(A). "[I]ntent may be inferred from the circumstantial evidence surrounding the incident including the acts, words and conduct of the accused." *Ramirez v. State*, 229 S.W.3d 725, 729 (Tex. App.—San Antonio 2007, no pet.) (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)). The term "conceal" is not defined by statute, so jurors may assign it any meaning which is acceptable in common parlance. *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012). Because section 20.05(a)(1)(A) requires only an intent to conceal, the question is not whether there was physical concealment, but whether the evidence allows a reasonable juror to find an intent to conceal. *Elsik v. State*, 678 S.W.3d 360, 364 (Tex. App.—San Antonio 2023), *aff'd*, 714 S.W.3d 27 (Tex. Crim. App. 2024).

### B. Discussion

Washington argues there is no evidence that he took any step to conceal his passengers because every passenger had their own seat in his car, no one was covered, and he did not flee from police. He acknowledges that he was driving during the day, with three passengers, two of whom crouched down and were later taken into custody by Border Patrol. He also acknowledges that he changed his story about how he met his passengers. However, he contends that the lack of evidence of "actual concealment" raises reasonable doubt as to whether he ever intended to conceal the passengers from law enforcement.

Viewed favorably to the verdict, the evidence presented at trial shows that Washington picked up two passengers, who came out of the brush, on the side of a highway and when law

enforcement encountered the vehicle, the back passengers were not visible because they were "partially laid down just below the window line[.]" The State introduced a photograph showing the passengers' position in the back seat. According to Investigator Stovall, this is a common tactic for someone who is possibly human smuggling. He also testified that the passengers' "dark shirt" and "beige clothing" was of significance because "people that are being smuggled into the United States, [] wear darker clothing or camouflage" to avoid detection. *See Minor v. State*, No. 07-23-00397-CR, 2025 WL 211324, at *3 (Tex. App.—Amarillo Jan. 15, 2025, no pet.) (mem. op., not designated for publication) (affirming smuggling of persons conviction where evidence of concealment included, among other factors, the passengers' camouflage clothing). Washington admitted that he received instructions from a person he called "Boss" to put the passengers in the trunk. Further, Agent Estrada testified that Washington changed his story about how he met the passengers and where he was taking them. *See Ross v. State*, 154 S.W.3d 804, 812 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd.) (making false statements to cover up the crime indicates a "consciousness of guilt" and is admissible to prove that defendant committed the offense); *see also Minor*, 2025 WL 211324, at *3 (affirming smuggling of persons conviction where evidence of concealment included conflicting explanations for his actions). From this evidence, the jury could reasonably infer that Washington had an intent to conceal his passengers. *See Jackson*, 443 U.S. at 319; *Ramirez*, 229 S.W.3d at 729–30.

Viewing the evidence in the light most favorable to the verdict, we hold the evidence was sufficient for the jury to find that Washington had the requisite intent to conceal an individual from law enforcement. Accordingly, we overrule Washington's insufficiency argument.

## CONCLUSION

Having overruled Washington's appellate issues, we affirm the trial court's judgment.


Lori Massey Brissette, Justice

DO NOT PUBLISH